**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Proven Networks, LLC<br>PATENT LITIGATION | MDL No. 2959 |

**PLAINTIFF PROVEN NETWORKS, LLC'S OPPOSTION TO MOTION FOR TRANSFER ACTION PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. MOVANTS FALL WELL SHORT OF MEETING THEIR BURDEN OF SHOWING THAT CENTRALIZATION IS PROPER ............................................................................ 3

III. IF THIS PANEL WERE TO DECIDE THAT CENTRALIZATION IS PROPER, THE CASES CLEARLY SHOULD BE CONSOLIDATED IN THE WESTERN DISTRICT OF TEXAS ................................................................................................................................ 9

    A. *Seven* of the Ten Actions Are Pending in the Western District of Texas—*and All Those Actions* Will Be Consolidated for Discovery and Claim Construction Purposes ........................................................................................ 9

    B. With Two Movants *Headquartered* in the Western District of Texas and All Other Movants Having Many Relevant Employees in that District, the Northern District of California is Not the "Clearly More Convenient" Venue........................................... 10

IV. CONCLUSION................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*In re: Select Retrieval, LLC, ('617) Patent Litigation,*
   883 F. Supp. 2d 1353 (J.P.M.L. 2012) ........................................................................... 8

*Battle ex rel. Battle v. Mem'l Hosp. at Gulfport,*
   228 F.3d 544 (5th Cir. 2000) ........................................................................................ 14

*Diem LLC v. BigCommerce, Inc.,*
   No. 6:17-CV-00186-JRG, 2017 WL 6729907 (E.D. Tex. Dec. 28, 2017) ................... 14

*In re Bear Creek Techs., Inc.,*
   858 F. Supp. 2d 1375 (J.P.M.L. 2012) ........................................................................... 4

*In re Blue Spike, LLC, Patent Litigation,*
   278 F. Supp. 3d 1379 (U.S.J.P.M.L. 2017) .................................................................... 8

*In re Constellation Technologies LLC Patent Litigation,*
   F. Supp. 2d, 2014 WL 4050169 (J.P.M.L. 2014) ................................................... 7, 8, 9

*In re Iron Oak Techs. LLC Patent. Litig.,*
   325 F. Supp. 3d 1371 (J.P.M.L. 2018) ........................................................................... 4

*In re Liquid Toppings Dispensing Sys. ('447) Patent. Litig.,*
   291 F. Supp. 3d 1378 (J.P.M.L. 2018) ........................................................................ 4, 6

*In re Mobile Telecomms. Techs., LLC Patent Litig.,*
   222 F. Supp. 3d 1337 (J.P.M.L. 2016) ........................................................................... 4

*In re TransData, Inc., Smart Meters Patent Litig.,*
   830 F. Supp. 2d 1381 (J.P.M.L. 2011) ........................................................................... 5

*In re Uniloc USA, Inc., and Uniloc Luxembourg, S.A., HPE Portfolio Patent Litigation,*
   F. Supp. 3d , 2018 WL 1631596 (J.P.M.L. 2018) ................................................... 8, 12

*Net Navigation Systems, LLC v. Cisco Systems, Inc.,*
   Case No. 4:11-CV-660 (Aug. 24, 2012) ...................................................................... 12

*Nexus Display Techs. LLC v. Dell, Inc.,*
   No. 2:14-CV-762, 2015 WL 5043069 (E.D. Tex. Aug. 25, 2015) .............................. 14

*Oyster Optics, LLC v. Cisco Systems, Inc.,*
   Case No. 2:16-cv-1301-JRG (Dec. 8, 2017) ................................................................ 12

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.,*
   No. 6:11-CV-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) .............................. 13

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang,*
   No. 2:18-CV-00014-JRG-RSP, 2018 WL 6589873 (E.D. Tex. Dec. 14, 2018) ......... 14

*Realtime Data, LLC v. Rackspace US, Inc.,*
   No. 6:16-CV-00961, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) ............................. 13

*SSL Services, LLC v. Cisco Systems, Inc.*,
 Case No. 2:15-cv-00433-JRG-RSP (Feb. 24, 2016) .................................................................. 13

*Tivo Inc. v. Cisco Systems, Inc.*,
 Case No. 2:12-cv-311-JRG (Aug. 13, 2012) ............................................................................ 12

**I.        INTRODUCTION**

Movants' request to centralize Proven Networks' actions and transfer the vast majority of the actions to the Northern District of California fails at every level.

On the question of centralization, the large degree of differences between the patents asserted across all cases makes this case unlike any case cited in movants' brief. While movants' brief is silent on the details on this relevant consideration, a review of the five patents asserted across all cases confirms that none of the asserted patents share a common inventor or a common specification or claim terms that likely will be in dispute. These differences matter. In stark contrast to the cases cited in movants' brief, this is not a situation in which a single patent or a family of patents with a common patent specification have been asserted in dozens of districts. And the differences do not end there. Regarding the products and damages overlap, there is none. The list of accused products also vary to a great degree. While movants do not attempt to make much of a showing otherwise, they concede that the accused products are not only different in degree, they are in different in kind, spanning three different markets and product categories:

The lack of overlap in patents, claims and products alone provide more than enough reason to deny movants' request. But there is more. Seven of the ten pending cases are in the Western District of Texas—and all are before Judge Alan Albright, who, as a fairly routine practice, consolidates cases filed around the same time involving any overlapping patents. Thus, it is likely that seven of the ten cases will be consolidated for discovery and pretrial purposes, including claim construction proceedings. And the remaining three cases likely will get consolidated in their own respective districts. All movants are left with are purely conclusory points about there being a common question about " reasonable royalty" and "invalidity," but those points are true in any situation in which a patent owner has to file in more than one district.

1

In short, movants' fall well short of meeting their burden on the question of centralization. Centralization would be futile and inappropriate under these circumstances.

If this panel were to find that centralization were proper in this case, the facts strongly suggest that centralization should take place in the Western District of Texas, not the Northern District of California. Movants also include very little detail concerning the "convenience" sub-factor, again opting for conclusions instead. But an examination of the relevant facts shows why movants might have left all the details out of their motion. As an initial matter, there are only two movants in the Northern District of California already—and one of them, F5 Networks, is not even headquartered in California at all. Mot. at 5-6. Amazon also is not headquartered in Northern District of California. And two of those seven remaining movants—Dell and SolarWinds—are headquartered in the Western District of Texas. Mot. at 5-6. There can be no plausible argument for greater convenience to move their cases away from the district in which they are headquartered. A third movant, SonicWall, has a case that is related to Dell's action and voluntarily sued Proven Networks in the Western District of Texas. Id. The other four movants which are technically headquartered in the Northern District of California each have a significant and relevant presence in Texas, including in Austin where the cases are pending. Their contacts include hundreds of employees and even "R&D" and data centers in Austin and nearby cities.

On the various other factors, movants fare no better. This is because some movants have made concessions before other courts that directly cut against their positions before this panel. For instance, contrary to what movants represent to this panel, Cisco has represented to Judge Gilstrap that court "congestion" and familiarity with the patent laws are, at best, "neutral."

**II.    MOVANTS FALL WELL SHORT OF MEETING THEIR BURDEN OF SHOWING THAT CENTRALIZATION IS PROPER**

   **A. While Movants' Brief Lacks Any Real Detail About the "Common Questions of Fact and Law," A More In-Depth Look Confirms Significant Differences that Render Movants' Request Wholly Unwarranted**

        **1.  *None* of the Asserted Patents Share a Common Specification or Any Common Inventors**

The large degree of differences between the patents asserted across all cases makes this case unlike any case cited in movants' brief. While movants' brief is silent on the details on this relevant consideration, a review of the five patents asserted across all cases confirms that:

- *none* of the asserted patents share a common inventor;
- *none* of the asserted patents share a common specification;
- *none* of the asserted patents share terms that likely will be in dispute; and
- *none* of the asserted patents share a common priority date.

Indeed, a shapshot of pages 6 and 7 of movants' brief tells us all we need to know to confirm this. Each patent contains a ***completely different*** and non-overlapping list of inventors:

| Patent No. | Named Inventor |
|---|---|
| 8,018,852 | Joseph Olakangil |
|  | Sahil Dighe |

3

| Patent | Inventors |
|---|---|
| 7,450,507 | Kishore Rao |
| | Diwakar Tundlam |
| | Eric Anderson |
| | Apurva Mehta |
| | Ajay Gaonkar |
| 8,812,454 | Krishna P. Puttaswamy |
| | Thyagaragjan Nandagopal |
| | Muralidharan S. Kodialam |
| 8,165,024 | Andrew Dolganow |
| | Keith Allan |
| | Coin Leon Kahn |
| 7,877,786 | Jeroen van Bemmel |

And this means that the patents obviously do not share a common specification, either. Nor do they share common claim terms, apart from the most basic terms in each patent.

These differences matter, a lot. In stark contrast to the cases cited in movants' brief, this *is not* a situation in which a single patent or a family of patents with a common patent specification have been asserted in dozens of districts. *See, e.g.*, *In re Mobile Telecomms. Techs., LLC Patent Litig.*, 222 F. Supp. 3d 1337, 1338 (J.P.M.L. 2016) (fourteen actions filed with the same three patents which shared common inventors and common specifications and claim terms); *In re Liquid Toppings Dispensing Sys. ('447) Patent. Litig.*, 291 F. Supp. 3d 1378, 1378-79 (J.P.M.L. 2018) (twelve actions across ten districts involving the same one patent); *In re Iron Oak Techs. LLC Patent. Litig.*, 325 F. Supp. 3d 1371, 1371 (J.P.M.L. 2018) (twelve actions across four districts with the same patents, all of which shared a common specification and claim terms); *In re Bear Creek Techs., Inc.*, 858 F. Supp. 2d 1375, 1380 (J.P.M.L. 2012) (fourteen actions across six districts asserting the same one patent); *In re TransData, Inc., Smart Meters*

4

*Patent Litig.*, 830 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011) (seven actions across five districts, asserting three patents with overlapping inventors and specifications and claim terms.)

To the contrary, in this set of actions, there is hardly ***any*** overlap in patent specifications and claim terms. And ***none*** of the patents are asserted in more than two districts. And some of the patents—like the '786 patent—is only asserted ***in a single district***. Consequently, there is little risk of inconsistent rulings or judgments on the patents and little, if any, efficiency to be gained by centralization. Movants' arguments miss this entire point. And their motion should be denied for these reasons alone.

### 2. The Cases Concern Significantly Different Accused Products and, Indeed, Different Accused Product *Categories*

This is not a case involving standard-essential patents or patents concerning the same, single kind of product. To the contrary, due to the low degree of overlap in the patent specifications, it is not surprising that the list of accused products also vary to a great degree. While movants do not attempt to make much of a showing otherwise, their brief does include a key, general concession. On page 10, they concede that the accused products are not only different in degree, they are in different in kind. Indeed, just taking movants' own representations on this issue, the accused products span three different *markets* and product *categories*: (1) storage controllers and associated software; (2) cloud computing; and (3) network traffic management devices, such as "routers and switches" and associated software. Mot. at 10.

These differences exist because the patents do not overlap to any significant degree. For example, the '454 patent is, at a high-level, related to novel systems for cloud computing and cloud storage. And the '786 patent, at a high-level, relates to novel network management devices. And these differences only further confirm there is little risk of inconsistent rulings or judgments on the patents and little, if any, efficiency to be gained by centralization.

### 3. None of the Movants Are Downstream Customers of Other Movants, Eliminating Redundant Infringement and Damages Discovery

To be clear, this case also does not involve a situation, like many of the cases cited by movants, in which the span of accused infringers covered suppliers and, separately, their customers, across separate districts across the country. For example, in one case heavily relied upon and cited numerous times by movants, this Panel analyzed a dozen actions, filed across ten districts against twelve common "franchisees" on the same exact infringement theory. *In re Liquid Toppings Dispensing Sys. ('447) Patent. Litig.*, 291 F. Supp. 3d 1378, 1378-79 (J.P.M.L. 2018). In those situations, there are obvious, distinct risks in duplicating work covering the same infringement and damages-related discovery.

But that is just not the case here. No downstream customers have been sued. No franchisees or end users have been sued. No two products or product categories are identical. This makes the infringement evidence and the damages evidence unique in each case, creating additional reasons why there is little to no efficiency gained by centralization.

### B. At Any Rate, Seven or Eight of the Ten Actions Likely Will Be Consolidated for Discovery and Claim Construction in Texas, Leaving Very Little, If Any, Efficiency Achieved Through Centralization

The lack of overlap in patents, claims and products alone provide more than enough reason to deny movants' request. But there is more.

*Seven* of the ten pending cases are in the Western District of Texas—and all are before Judge Alan Albright, who, as a fairly routine practice, consolidates cases filed around the same time involving any overlapping patents. Ex. N.[1]

Thus, it is likely that seven of the ten cases will be consolidated for discovery and pretrial purposes, including claim construction proceedings. And the remaining three cases likely will get

---

[1] All exhibits are attached to the concurrently filed declaration of Paul A. Kroeger.

6

consolidated in their own respective districts. And again, **no patent** will be asserted across more than two districts in any event. And **no product** will be accused across more than one district. Centralization would be futile and inappropriate under these circumstances. *E.g.*, *In re Constellation Technologies LLC Patent Litigation*, F. Supp. 2d, 2014 WL 4050169, *1-*2 (J.P.M.L. 2014)  (refusing request for centralization because, in part, "[t]he two actions pending in the Eastern District of Texas already have been consolidated for pretrial purposes before the same judge. Similarly, the three actions pending in the District of Delaware have been related before a single judge.").

### C. A Review of this Panel's Precedent, Including the Decisions Cited By Movants, Confirms The Unprecedented Nature of Movant's Flawed and Meritless Request

None of the movants' cited cases support their request. Indeed, the cases prove the opposite. ***None*** involved a circumstance in which the supposedly "common" patents did not have a single common inventor or patent specification, the "common" products did not involve a single overlapping product models, and no patent was asserted across more than two districts. *See, e.g., supra* at 4-5.

On the other hand, a review of this panel's precedent proves that movants' request should be denied. As an initial matter, movants' request is devoid of any real detail or discussion about the commonalities, other than general conclusions that there is common ground, despite the fact that no patent shares an overlapping inventor and no case shares overlapping product models.

Under this panel's precedent, this alone confirms that movants' cannot meet their burden for the extraordinary "relief" they seek. After all, parties "seeking centralization have the burden of demonstrating the existence of common questions of fact such that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation"—and movants' just have not proffered any detail on why that is the case here, so their

request fails. *E.g., In re: Select Retrieval, LLC, ('617) Patent Litigation,* 883 F. Supp. 2d 1353, 1354 (J.P.M.L. 2012) (denying motion to centralize nine different infringement actions because "[p]roponents also have shown no evidence of common claims construction terms. Nor has it been determined at this stage of the litigation whether defendants will assert common invalidity arguments as to the '617 patent….") Movants' generalized assertions just will not cut it. E.g., *In re Constellation Technologies LLC Patent Litigation*, F. Supp. 2d, 2014 WL 4050169, *1-*2 (J.P.M.L. 2014)  (refusing to centralize five infringement actions because **"while all twenty-nine patents raised in these actions relate to the telecommunications industry, *they involve a wide range of technologies and do not descend from a common patent 'family' (i.e., the patents have many different inventors*)**. Even the licensing issues, which the proponents of centralization argue will be common across all actions, will necessarily differ from patent to patent and, thus, from action to action.") (emphasis added).

Beyond movants' failure, the facts here would not ever help movants anyway. To the contrary, the facts in this case strongly weigh against granting movant's request. Indeed, even in past cases involving *six* districts and *more* overlap between patents, this panel still (rightly) rejected an argument that centralization was appropriate. *In re Uniloc USA, Inc., and Uniloc Luxembourg, S.A., HPE Portfolio Patent Litigation*, F. Supp. 3d , 2018 WL 1631596, *1-*2 (J.P.M.L. 2018) (refusing to centralize twenty-five infringement actions pending in six districts, involving seven patents, because only two of the seven patents were related, the asserted patents involved 18 different named inventors). This is true even where the actions were spread across four districts and involved the same patent. *In re Blue Spike, LLC, Patent Litigation,* 278 F. Supp. 3d 1379, 1380 (U.S.J.P.M.L. 2017) (denying motion to centralize nine infringement actions pending in four districts and involving thirty-five asserted patents with the same inventor

8

because "[d]espite any facts shared among the actions, Blue Spike has failed to demonstrate 'that there is enough commonality to make centralization necessary or even advantageous.' Several considerations weigh against centralization here.")

Accordingly, based on the facts here, there is no precedent or any meaningful basis to centralize Proven Networks' actions. And there is no need to analyze the remaining issues in movants' brief.

**III.    IF THIS PANEL WERE TO DECIDE THAT CENTRALIZATION IS PROPER, THE CASES CLEARLY SHOULD BE CONSOLIDATED IN THE WESTERN DISTRICT OF TEXAS**

**A.    *Seven* of the Ten Actions Are Pending in the Western District of Texas—*and All Those Actions* Will Be Consolidated for Discovery and Claim Construction Purposes**

If this panel were to find that centralization were proper in this case, the facts strongly suggest that centralization should take place in the Western District of Texas, not the Northern District of California.

As they did with their burden on the issue of *whether* this panel should centralize, movants again state conclusions, rather than details, concerning *where* this panel should centralize. That alone confirms movants' failures to meet their burden.

But taking a look at the facts here only confirms movants' request should fail. As the parties agree, seven of the ten cases are pending there. As demonstrated above, it is likely those seven cases will be consolidated for discovery and pretrial purposes, including claim construction proceedings. And the remaining three cases likely will get consolidated in their own respective districts. And again, **no patent** will be asserted across more than two districts in any event. And **no product** will be accused across more than one district. Centralization would be futile and inappropriate under these circumstances. *E.g.*, *In re Constellation Technologies LLC*

9

*Patent Litigation*, F. Supp. 2d, 2014 WL 4050169, *1-*2 (J.P.M.L. 2014)  (refusing request for centralization because, in part, "[t]he two actions pending in the Eastern District of Texas already have been consolidated for pretrial purposes before the same judge. Similarly, the three actions pending in the District of Delaware have been related before a single judge.")  And as this panel already has found, the trial judges in Texas have "significant experience handling patent infringement actions."

      **B.**      **With Two Movants *Headquartered* in the Western District of Texas and All Other Movants Having Many Relevant Employees in that District, the Northern District of California is Not the "Clearly More Convenient" Venue**

Movants also include very little detail concerning the "convenience" sub-factor, opting for conclusions instead, with the hopes that this panel just takes their word for it. But the relevant facts on this issue also undercut their conclusions on that issue.

A look at the relevant facts shows why movants might have left all the details out of their motion. As an initial matter, there are only two movants in the Northern District of California already—and one of them, F5 Networks, is ***not*** even headquartered in California at all. Mot. at 5-6. Amazon also is ***not*** headquartered in Northern District of California. *Id*.

This leaves seven movants who seek transfer—and a closer review of their relevant facts proves movants are incorrect in their assertions.

Indeed, two of those seven remaining movants—Dell and SolarWinds—***are headquartered*** in the Western District of Texas. Mot. at 5-6. There can be no plausible argument for greater convenience to move their cases away from the district in which they are headquartered. A third movant, SonicWall, has a case that is related to Dell's action and ***voluntarily sued*** Proven Networks in the Western District of Texas. *Id*. There can be no reasonable story for why SonicWall deserves transfer, either.

10

This gets us to four movants who are technically headquartered in the Northern District of California—but they each have a significant and relevant presence in Texas, including in Austin where the cases are pending. This makes the "convenience" sub-factor for even these four movants neutral, at best.

For example, Cisco makes much of its pending motion to transfer to the Northern District. But it fails to cite its relevant contacts in Texas. And there are plenty. Indeed, there appear to be at least three employees in the Richardson, Texas office who potentially have knowledge of the network routing, inspection, and security features that are accused of infringement. Kroeger Decl., Ex. K (LinkedIn Profile of Ed Davison a "threat hunter analyst" working from Richardson; Ex. L (LinkedIn Profile of Kishan Ahuja, Team Lead at the Richardson office who a "certified internetwork expert"); Ex. M (LinkedIn Profile of Sai Arun Jumar Jujarampalli a "Software Architect" working from the Richardson office). Moreover, Cisco appears to have a number of other United States branch offices, including in Austin and Houston. Kroeger Decl., Ex. F. Cisco, however, fails to provide any information about potential witnesses from any of these offices. It is highly unlikely that there is not a single relevant witness from any Cisco office outside the Northern District of California with relevant knowledge about the accused products. For example, Cisco admits that its engineering lead for one of the accused products, David Abe, is based in Cisco's office in Boxborough, Massachusetts—significantly closer to either the Western District of Texas or the Eastern District of Texas (where Proven's action against Cisco is currently pending) than to the Northern District of California. Cisco's cherry-picking of witnesses from only its offices in the Northern District of California, and failure to provide any information about potential relevant witnesses from its other offices, is improper.

Furthermore, Cisco has admitted that at least some of its documents are stored on servers located *in Richardson, Texas*. Ex. Y at 3. Indeed, this Richardson facility is described by Cisco as a "Tier III" Data Center. Ex. I at 2 . According to public reports, "Cisco spent $80 million to retool an used office building on its Richardson campus as a Tier III data center (with Teir IV power infrastructure) to support the consolidation of its global network." Ex. J. This building comprises of 285,000 square feet, of which 30,000 square feet is dedicated to "data hall space." *Id.*

Thus, it is unlikely that a transfer would make anything more "convenient" for Cisco. And this is probably why the Court before which its motion to transfer is pending routinely denies its requests. For example, it has previously found that Cisco's maintenance of documents on its servers in Richardson weighs against transfer. *See* Ex. A (Order, *Oyster Optics, LLC v. Cisco Systems, Inc.*, Case No. 2:16-cv-1301-JRG, at 5-7 (Dec. 8, 2017) (Gilstrap, J.) (denying Cisco's motion to transfer from this District to the Northern District of California and finding that Cisco's storage of documents on its Richardson, Texas servers weighed against transfer)).

This was not a "one off" result. Indeed, Cisco frequently attempts to transfer out of the jurisdiction of the Eastern District of Texas, but courts of this District routinely recognize that the Northern District of California is not a clearly more convenient forum for disputes involving Cisco, particularly in light of Cisco's ties to this District. *See, e.g.*, Ex. B (*Uniloc 2017 LLC v. Cisco Systems, Inc.*, Case No. 2:18-cv-00505-JRG (Sept. 16, 2019) (Gilstrap, J.) (denying Cisco's motion to transfer venue to the Southern District of New York)); C (*Net Navigation Systems, LLC v. Cisco Systems, Inc.*, Case No. 4:11-CV-660 (Aug. 24, 2012) (denying Cisco's motion to transfer venue to the Northern District of California)); D (*Tivo Inc. v. Cisco Systems, Inc.*, Case No. 2:12-cv-311-JRG (Aug. 13, 2012) (Gilstrap, J.) (denying Cisco's motion to transfer venue to the Northern District of California)); E (*SSL Services, LLC v. Cisco Systems, Inc.*, Case No. 2:15-cv-00433-

JRG-RSP (Feb. 24, 2016) (Payne, J.) (denying Cisco's motion to transfer venue to the District of Massachusetts)).

The other remaining movants fare no better. For example, HPE has a very large building and data center in Austin, with hundreds of employees. Ex. Q. A LinkedIn search alone results in 559 employees in that city. Ex. R. This includes the Director and Associate General Counsel" of IP and the Vice President of Supplier Management, to name a few. Exs. S-T.

Netapp also has hundreds of employees in Texas. Ex. V. This includes highly relevant potential witnesses such as the "Cloud Solutions Principal Architect" and the worldwide cloud business development director. Ex. W. And the same is true for Arista. In fact, Arista has a large "R&D" center in Austin, with many network-product employees. Ex. U.

This trend continues, even for third parties. For example, Alcatel-Lucent, the original assignee of the asserted patents, has a regional office in Plano, Texas, within the Eastern District of Texas, and would therefore be subject to this subpoena power of that Court. Kroeger Decl., Ex. G.  It is also substantially closed to the Western District of Texas than the Northern District of California. As a prior owner of the patents-in-suit, Alcatel-Lucent may well have relevant documents and witnesses concerning the patents.

And though the movants cherry-pick some supposedly relevant third-party "prior art" witnesses they "believe" reside in" Northern California, that should be rejected as well and it provides no basis for transfer. Courts have repeatedly recognized that "inventors of prior art rarely, if ever, actually testify at trial." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017) ("*Rackspace*"); *see also PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013) (further recognizing that "[i]n most cases, the only witnesses who actually testify about

13

prior art are the named inventors of the patents-in-suit and expert witnesses," and "[o]ccasionally, a party's corporate representative"). That is because, "[w]ithout even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Rackspace*, 2017 WL 772653, at *8; *see also Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-00186-JRG, 2017 WL 6729907, at *3 (E.D. Tex. Dec. 28, 2017) (same). Regardless, even assuming, *arguendo*, that the third parties are necessary for trial, nearly all the potential witnesses can be subpoenaed for depositions under Rule 45, regardless of whether the cases are centralized. *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 2:18-CV-00014-JRG-RSP, 2018 WL 6589873, at *3 (E.D. Tex. Dec. 14, 2018). Cisco does not assert that using the third-party witnesses' deposition testimony would be an inconvenience. *Nexus Display Techs. LLC v. Dell, Inc.*, No. 2:14-CV-762, 2015 WL 5043069, at *4 (E.D. Tex. Aug. 25, 2015) (citing *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000)).

### C. The Applicable Statistics Concerning the Administrative Difficulties and Pendency of Cases Weighs *Against* Transfer to N.D. Cal, Not For It

To give the appearance of some supposed advantage in the Northern District of California, movants discuss the average case load number. But that is not the right metric. The right metric is *time*. On that metric, the actual available statistics show that the time to trial in the Western District of Texas is almost the same as that than in the Northern District of California. *See,* Ex. H (showing the median time to trial is 24.3 months for the Western District of Texas and 22 months for the Northern District of California).

### D. Despite the Meritless Representations To This Panel, Various Movants Have Conceded the Remaining Factors Are, at Best, "Neutral"

14

On various public interest factors, this panel need not just accept Proven Networks' citations and evidence. This is because some *movants* have made concessions before other courts that directly cut against their positions before this panel. For instance, Cisco has represented to Judge Gilstrap that these factors are, at best "neutral."

> The first, third, and fourth public interest factors, "Administrative Issues Related to Congestion," the "Court's Familiarity with the Controlling Law" and the "Potential Conflict of Law Issues," are neutral. *Cf., Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 2:09-cv-200-TJW, 2011 WL 2937365, at *3-4 (E.D. Tex. July 19, 2011) (order granting motion to transfer venue). For the first factor, "the administrative difficulties flowing

Ex. Y at 14. Because these factors are really neutral, movants cannot meet their burdens here.

IV.  **CONCLUSION**

For all the foregoing reasons, Proven Networks respectfully asks that the Panel deny movants' requests.

Dated: August 11, 2020                        Respectfully submitted,

/s/ Marc A. Fenster

Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Paul A. Kroeger (SBN 229074)
pkroeger@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

15

***Attorneys for Plaintiff Proven Networks, LLC***