BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION


In re PROVEN NETWORKS,        .  MDL NO. 2959
LLC, PATENT LITIGATION        .  Thursday, September 24, 2020
. . . . . . . . . . . . . . .  10:22 a.m.


TRANSCRIPT OF ORAL ARGUMENT
VIA VIDEO TELECONFERENCE


BEFORE:

HONORABLE KAREN K. CALDWELL, CHAIR
Eastern District of Kentucky

HONORABLE ELLEN SEGAL HUVELLE
District of Columbia

HONORABLE CATHERINE D. PERRY
Eastern District of Missouri

HONORABLE NATHANIEL M. GORTON
District of Massachusetts

HONORABLE MATTHEW F. KENNELLY
Northern District of Illinois

HONORABLE DAVID C. NORTON
District of South Carolina

HONORABLE R. DAVID PROCTOR
Northern District of Alabama


For Plaintiffs:            SARAH PIEPMEIER, ESQ.

For Defendants:            PAUL A. KROEGER, ESQ.

Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                           U.S. Courthouse, Room 4704-A
                           333 Constitution Avenue NW
                           Washington, DC 20001
                           (202) 354-3186


Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

1                  P R O C E E D I N G S

2           JUDGE CALDWELL:  The Panel will now move to MDL No.

3    2959 regarding Proven Networks LLC.  This is patent litigation.

4       Ms. Sarah Piepmeier?  I hope I'm pronouncing that

5    correctly.

6           MS. PIEPMEIER:  Good morning.  May I proceed?

7           JUDGE CALDWELL:  You may.

8           MS. PIEPMEIER:  Thank you, Your Honor.  Good morning.

9    I'm Sarah Piepmeier.  I am of Perkins Coie, and I represent

10   Defendant Cisco.  I'm appearing this morning from San Francisco

11   on behalf of all moving defendants in the nine actions.  And I

12   say nine instead of 10 because plaintiffs dismissed one without

13   prejudice recently.  We're all arguing in support of

14   centralization and we are asking for the Northern District of

15   California.

16           JUDGE CALDWELL:  Thank you.

17           MS. PIEPMEIER:  Your Honors, I would like to address

18   four brief reasons why centralization is appropriate and why

19   it's appropriate in the Northern District of California.

20       First, we're dealing with a patent infringement action with

21   five asserted patents.  All of these five patents were

22   purportedly assigned through a series of assignments going from

23   Alcatel to Provenance, and then ultimately, allegedly, to Proven

24   through an entity known as RAK Investments.

25       All five of these patents are going to raise the same

standing, ownership, assignment and licensing issues, and that will cut across all nine actions in three districts.  This is a somewhat unique situation, though, that you're not going to see in many patent litigations because the lawyers who are trying the case for Proven purport to be the owners of the patent.

And there are going to be significant discovery issues across all nine actions regarding standing, ownership, licensing, assignment, and to be clear, that will cut across all patents, all jurisdictions, all matters.

And we also anticipate, Your Honors, that Proven may assert privilege in certain communications.  If these aren't centralized, that's going to be dealt with in three different districts, potentially at this point four different judges, in multiple different actions.

The second reason, Your Honors, is that setting aside the common purported ownership, license issues, assignment issues, right now you have at least two different judges who will have to conduct claim construction hearings and deal with invalidity in three of the five asserted patents.  And those are common issues across everything.

Third, each of these actions deal with networking technology.  That is how plaintiffs characterize them in their filing.

Finally, this should be centralized in the Northern District of California because the majority of the defendants

1    are headquartered there.  There are no connections to Texas that

2    is relevant and plaintiff itself is in California, in addition

3    to third parties.

4                    JUDGE CALDWELL:  Thank you.

5                    MS. PIEPMEIER:  I see my time is up.

6                    JUDGE CALDWELL:  Members of the Panel, do you have

7    questions for Ms. Piepmeier?  Yes.  Judge Kennelly.

8                    JUDGE KENNELLY:  So it looks like there was one case

9    now that's been voluntarily dismissed where there was a Section

10   101 motion.  Are there Section 101 motions that have been filed

11   in any pending case, case that's still pending, in other words?

12                   MS. PIEPMEIER:  That is a somewhat complicated

13   question because there was a 101 motion that was pending in the

14   F5 case.  That case was also voluntarily dismissed and then

15   refiled.  My understanding from checking PACER last night is

16   that there is not currently a pending 101 motion, but I believe

17   the answer deadline for that amended complaint after Proven

18   voluntarily dismissed it has not run.

19                   JUDGE KENNELLY:  So putting that one aside, in the

20   other ones have answers been filed?

21                   MS. PIEPMEIER:  I believe answers have been filed or

22   motions to dismiss.  In the HPE-Auriga case, there was actually

23   a motion to dismiss.  In all actions, I am not aware currently

24   of any 101 motions pending in either the Western District of

25   Texas, and I know there isn't one in the Eastern District of

1   Texas.

2        JUDGE KENNELLY:  I have one other question.  I mean,

3   as you've pointed out, or as people have pointed out, there are

4   different patents, and some are involved in some cases and some

5   are involved in others.  Not that this is necessarily

6   dispositive or even all that significant, is there any one

7   single thing that kind of holds all these cases together?

8        MS. PIEPMEIER:  Well, I think there's two, Your Honor.

9   The first is that we have -- and I don't want to overstate it,

10  but it's a very, very significant assignment and ownership issue

11  that cuts across all five patents.  And that is going to have to

12  be decided, if it's not centralized, by three different

13  districts.  And it will be the same, because the assignment

14  chain, if it is not the same, is very similar, and they all flow

15  through RAK Investments.  So that's the first point.

16      The second point, Your Honor, is that all of these have to

17  do with networking technologies.  We're talking about the same

18  space here.  Many of the defendants here are in fact

19  competitors.  A couple of them are suppliers to or authorized

20  resellers.  So there's that kind of upstream/downstream

21  relationship.  So there actually are relationships that cut

22  across everything regardless of who the inventors are or whether

23  they share a common specification.

24        JUDGE KENNELLY:  So is the issue on the -- the

25  ownership issue, is the question going to be whether the current

1   owners properly acquired the necessary bundle of rights or

2   whatever you'd call it?

3           MS. PIEPMEIER:  That would be one of the issues,

4   Your Honor.  That is not the only issue, however, because

5   there are going to be valuation issues and licensing issues

6   that will be common to all five patents.  So even if plaintiff

7   does have standing, you're going to have other issues that are

8   common across all patents that you won't normally see in a

9   patent litigation situation with five patents that aren't in

10  the same family.

11          JUDGE KENNELLY:  Okay.  Thank you.

12          JUDGE CALDWELL:  Any other judges?  Yes, Judge Perry.

13          JUDGE PERRY:  I believe your position is that there

14  will be claims construction issues that would be common, and I

15  couldn't tell from the papers, what are -- are there -- there

16  aren't claims that are common to the patents, correct?  There

17  are no common claims?

18          MS. PIEPMEIER:  Your Honor, each of the five patents

19  have different claims, but the way the matrix works, you have

20  three of the same patents asserted in at least two different

21  jurisdictions.  What that means is that there will be a *Markman*

22  hearing held by a judge in two different venues for three of

23  these patents, and they will most likely address the exact

24  same claim terms.  And so you have the potential for divergent

25  opinions on the exact same claim term, and that affects issues

1  such as validity that are common across all cases.

2      JUDGE PERRY:  So in looking at the chart, so that's

3  for three -- three of the patents are in common across the cases

4  but the others are separate.  Is that correct?

5      MS. PIEPMEIER:  Your Honor, the '024, the '454, and

6  the '507 patents are each asserted in two different

7  jurisdictions.  The '852 I believe is currently only in Texas,

8  and the '786 I believe is currently only in the Northern

9  District of California.

10     I know, however, that the Extreme case that was dismissed

11 was dismissed without prejudice.  So we don't know if and when

12 that might be refiled, which would add another check box and

13 make it -- at least one patent common across all three

14 jurisdictions.

15     JUDGE PERRY:  All right.  Thank you.

16     JUDGE CALDWELL:  Anyone else?

17     Thank you very much, Ms. Piepmeier.

18     MS. PIEPMEIER:  Thank you, Your Honors.

19     JUDGE CALDWELL:  The Court will hear from

20 Paul Kroeger.

21     MR. KROEGER:  Good morning, Your Honors.  Paul Kroeger

22 from Russ August & Kabat.  I represent Proven Networks, and we

23 oppose consolidation or, in the alternative, we ask for

24 consolidation to the Western District of Texas.

25     JUDGE CALDWELL:  Please proceed.

1    MR. KROEGER:  Just to summarize a few of the points,

2    the things that have changed since the filing as my co-counsel

3    or opposing counsel alluded to.  There are presently nine causes

4    of action, which only one in the Northern District of California

5    against F5 which asserts only the '507 and '786 patents.  That

6    is the only jurisdiction in which the '786 patent is pending.

7    This means that none of the five patents -- of the five

8    patents, none of them are asserted in more than two

9    jurisdictions.  The '454 and the '024 are the only patents

10   asserted in the Eastern District of Texas.  All of the rest are

11   asserted in the Western District of Texas across six actions.

12   The F5 action's currently assigned to Judge Orrick.  The

13   Extreme case was, as I noted in my supplemental filing,

14   dismissed pursuant to a resolution of the parties.  So although

15   it was dismissed without prejudice, it was actually dismissed

16   pursuant to resolution.  There are no plans to refile that at

17   the present time.

18   We don't believe this is a proper or appropriate case

19   for consolidation because these are five separate patents,

20   each which share separate inventors, a separate specification.

21   There are no common claim terms, there are no common invalidity

22   references.

23   Ms. Piepmeier made a reference to standing issues

24   concerning the assignment.  I did not have time to check every

25   defendant's answer, and admittedly some of them have not

1    answered yet because they filed motions to dismiss or transfer.

2    But I note that, for instance, Cisco's answer filed in the

3    Eastern District of Texas does not raise standing as an

4    affirmative defense, and sitting here today, I'm not aware

5    whether any of the defendants have actually raised standing

6    as an affirmative defense.

7        With that, I will yield the rest of my time in taking

8    questions.

9             JUDGE CALDWELL:  Questions from the Panel?

10       Yes.  Judge Kennelly.

11            JUDGE KENNELLY:  So your opposing counsel said

12   basically that -- I don't know if she said there was the same

13   claim term involved across jurisdictions, but basically the

14   impression I got out of it was, for want of a better word, kind

15   of like a daisy chain, so this has some things in common with

16   this, and this has some things in common with that, and that has

17   some things in common with the next thing.  Is that right or not

18   right?  In terms of the claim terms.

19            MR. KROEGER:  Sure.  We don't agree with that

20   characterization, Your Honor.  Again, these are unrelated

21   patents, separate specifications, separate inventors, separate

22   claims.  I mean, at a broad sense, I guess you could say they

23   relate to networking technology.  But the '454 involves cloud

24   storage, the '024 involves deep packet inspection, the '786

25   involves network management, the '852 involves routing decisions

1    of a network switching device, the '507 involves limit check and

2    specifically something novel called an infinity rate-limit

3    check.

4        While there may be some terms that are quote-unquote the

5    same because they all involve computer technology, they would be

6    interpreted based off of different specifications and different

7    inventors, et cetera.

8        JUDGE KENNELLY:  My other question has to do with

9    the location of witnesses.  Defense counsel basically said that

10   all or virtually all of the defense witnesses, the corporate

11   representatives in other words, are going to be in Northern

12   California and essentially none of them are in Texas.

13       Do you disagree with that, and if so, why.

14       MR. KROEGER:  Yes, we do.  Two of the defendants, or

15   at least one of the defendants, SonicWall -- actually two of the

16   defendants, SolarWinds and Dell, are headquartered in the

17   Western District of Texas.

18       JUDGE KENNELLY:  That's two out of how many?

19       MR. KROEGER:  That's two out of nine.  But as we state

20   in our papers, a majority of them have significant presence in

21   the Western District of Texas, including NetApp, Amazon, HPE,

22   and Cisco, I believe, has presence in ED Tex.

23       JUDGE KENNELLY:  The fact that they have offices there

24   doesn't mean they can be compelled to come there to testify.

25   Aren't you likely going to be taking all of these depositions in

1    Northern California somewhere?

2         Well, I mean, now you're going to be taking them by video,

3    obviously, but hopefully at some point in time there's going to

4    be things called trials that happen in actual locations again.

5    At that point, we've got an issue, right?

6              MR. KROEGER:  We do hope, Your Honor.  However, to be

7    quite frank, I'm starting to like Zoom depositions.

8         Based off the two witnesses they have cherry-picked in

9    their papers, they have identified witnesses they say are in the

10   Northern District of California as of right now.  For this case

11   to progress to discovery, I'm not certain that if in-person

12   depositions were necessary, they would necessarily stick with

13   those.

14             JUDGE KENNELLY:  Okay.  Thanks.

15             JUDGE CALDWELL:  Anyone else?

16        Yes, Judge Perry.

17             JUDGE PERRY:  Did I understand you to say that there

18   are only two patents that are pending in more than one -- well,

19   let me ask you this:  How many cases is the '024 patent pending

20   in currently?

21             MR. KROEGER:  Six.  And it is pending in WD Tex and ED

22   Tex only, not in ND Cal.

23             JUDGE PERRY:  Yeah.  So I understand that there are

24   only two in Northern District of California.  And then the '852

25   is in five cases; is that correct?

1          MR. KROEGER:  That is correct, and presently all of

2     them are in WD Tex.

3          JUDGE PERRY:  And the '454 is in three cases.  Right?

4          MR. KROEGER:  Correct.  That is in three cases in ED

5     Tex and WD Tex.

6          JUDGE PERRY:  Okay.  Thank you.

7          JUDGE CALDWELL:  Anyone else?

8        Judge Proctor.

9          JUDGE PROCTOR:  So you still have scheduled today

10    the case management conference in the actions in the Western

11    District of Texas?

12         MR. KROEGER:  That was rescheduled at the parties'

13    request to October 21st, but that is still on the calendar in

14    all WD Tex cases except for the SonicWall DJ case.

15         JUDGE PROCTOR:  Is that because of today's hearing?

16         MR. KROEGER:  And because I requested an extension on

17    infringement contentions which otherwise would be due a few

18    weeks ago, so the CMC -- the infringement contentions run from

19    the CMC date, so that was rescheduled at my request for the

20    extension.

21         JUDGE PROCTOR:  Have the parties had any discussions

22    about coordination of these other district actions and the fact

23    that there will be overlapping discovery at least in some

24    respects?

25         MR. KROEGER:  No, Your Honor.

1          JUDGE PROCTOR:  Why not?

2          MR. KROEGER:  We've never been contacted by movants to

3     discuss any coordination of discovery.  You know, a discovery

4     plan has already been in place in Cisco, has been I believe

5     since June.  We have a docket control order there.  We'll

6     actually start to exchange claim terms on October 5 in the Cisco

7     action.  I think, as we discussed, the docket control order in

8     the WD Tex cases, by October 21st any coordination of discovery

9     would probably come up in those discussions, and the one ND Cal

10    case against F5 is still in its infancy.

11         JUDGE PROCTOR:  Just seems that if you're opposing

12    centralization, that might have been a practical step you took

13    before the hearing before us today, to reach out and say, look,

14    we don't think centralization is warranted here, but here's what

15    we're willing to do.  That hadn't taken place?

16         MR. KROEGER:  That has not taken place, Your Honor.

17    Again, we don't necessarily agree that there's much

18    centralization here.  I mean, if there is centralization it's in

19    WD Tex.  But every one of these patents is standalone and will

20    have their own prior art, their own claim terms.  Every party

21    will have their own witnesses.  From our point of view, it just

22    doesn't appear that this is the right case for centralization or

23    coordination.

24         JUDGE PROCTOR:  Well, there will be claim construction

25    hearings in '024, '454, and '507 in separate districts as of

1    right now?

2              MR. KROEGER:  That is correct.

3              JUDGE PROCTOR:  Thank you.

4              JUDGE CALDWELL:  Any other judges?

5         Thank you very much.  That concludes our arguments on MDL

6    2959.

7         (Proceedings adjourned at 10:38 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE *

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE


* PLEASE NOTE:

This hearing was taken via videoconference in compliance with U.S. District Court Standing Order 20-19 during the COVID-19 pandemic.  Transcript accuracy may be affected by limitations associated with use of electronic technology, including but not limited to any sound distortions and/or audio/visual interferences.