BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Proven Networks, LLC<br>PATENT LITIGATION | MDL No. 2959 |

**Opposition to F5 Network Inc.'s**
**Motion to Vacate the Conditional Transfer Order (CTO-1)**

During the motion to transfer briefing and oral argument, F5 chose to sit back and remain silent, only noting it did not oppose transfer to the Northern District of California. Now unhappy with the outcome, F5 suddenly finds its voice to object to the Panel's Conditional Transfer Order (CTO-1). F5 asks the Panel to re-hear essentially the same arguments and issues first argued by Proven in hopes of a different result. And F5 foreshadows that this motion will not be the end of its "two bites at the apple" approach. Instead, F5 will agree to not duplicate efforts—only so long as those issues resolve in F5's favor. F5's litigation strategy, if not centralized, will burden the witnesses, parties, and the judiciary. Instead, by centralizing F5 in the Western District of Texas, the Panel will achieve the result it sought to achieve through its Transfer Order. (Transfer Order, p. 2.)

I.  ARGUMENT

In ordering transfer under Section 1407, the Panel determined that the actions "involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." (Transfer Order at 2.) The Panel's consolidation here assigns "these actions to a single judge, who has already gained [and will gain] familiarity with the parties and the patent, who can ensure that pretrial proceedings are conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of all parties and the court." *See In re: Parallel Networks, LLC ('111) Patent Litigation*, 867 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012). For those reasons, the law requires that F5 must make a "showing of good cause" to prevail in vacating CTO-1. *See In re Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970). Good cause exists where the movant can show that the transfer ***will not*** "serve the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation." *See In re: Accutane Products Liab. Litig.*, 560 F. Supp. 2d 1370, 1370 (J.P.M.L. 2008).

### A. F5's Claims of Unique Issues and Inefficiencies are Hollow.

F5 leads its motion with an argument (at 7) that the inclusion of an additional patent (the '789 patent) and a new category of accused product would be a "wholly unshared patent case that increases the litigation and centralization burden on Judge Albright by 25%" asserted only against F5." F5 also contends that there are different accused products and allegedly infringing acts between Dell, NetApp, and F5 for the overlapping '507 patent. But F5 had no concern for placing these exact same burdens on the court in the Northern District of California before the Panel's Transfer Order, stating that it "*[d]oes not oppose transfer to N.D. Cal.*, **otherwise takes no position**" for centralization. (emphasis added.)

F5 materialized these objections on *whether* to centralize *only after* being unsatisfied with the Panel's decision on *where* to centralize. Had F5 meaningfully participated in the briefing, instead of lying-in wait, it would have understood that Proven made substantially similar arguments and the Panel rejected them. For example, F5 argues (at 7) that the '786 patent is "not asserted against *any* Texas defendant." (emphasis in original.) Proven made this exact argument: "[S]ome of the patents—like the '786 patent—is only asserted *in a single district*." (Dkt. 29 at 5 (emphasis in original).) F5 also argues (at 7, 8) that inclusion of the '786 patent, adds "a new category of accused product" and the assertion of the '507 patent against F5 is unique because there are "different accused products and allegedly infringing acts." Again, Proven made these same arguments (Dkt. 20, at 5) to avoid centralization: "The Cases Concern Significantly Different Accused Products and, Indeed, Different Accused Product Categories." The Panel rejected them.  As to the burden on witnesses, F5 acknowledges that counsel for both F5 and Proven are in California. Customary practice is for witnesses to be deposed where they or their counsel's offices are, regardless of the venue. And, as F5 acknowledges (at 12), trial would still occur in the Northern District of California. So, witnesses will not be subject to any undue

travel requirements.[1]

Having rejected these very arguments when Proven made them to avoid centralization, the Panel should not now credit them for F5 to avoid centralization.[2]

### B. Centralization Should Occur to Preclude the Inefficiencies of F5's Attempts to Preserve an Opportunity to Re-litigate any Decision it Dislikes.

Shrouded in its brief under the guise of informal cooperation, F5 belies its desire to preserve the ability to re-litigate any issue that it disagrees with—just as it is doing now. This strategy does not promote conservation of resources of the parties and the judiciary and certainly does not avoid inconsistent results.

For example, F5 states (at 10) that it "will also coordinate with defendants, particularly with NetApp and Dell, on claim construction for the '507 patent, including preparing any joint claim construction statement and briefing related to the '507 patent." But F5 also does not preclude arguing different terms for the '507 patent if it were to litigate in the Northern District of California and more tellingly, F5 readily acknowledges (at 8) that "***F5 could ask the California court to revisit prior constructions of the terms of the '507 patent.***" (emphasis added.) That is, F5 will coordinate in claim construction in the Western District of Texas and agree to those terms only so long as it suits F5. If the Texas court goes against F5, it seeks to preserve its ability to take another bite at the apple.

Likewise, F5 agrees (at 10) to "attend depositions of Proven's invalidity and claim construction experts with the Texas defendants" (without agreeing to submit the same issues where they overlap in California) and use those transcripts in California. But F5 refuses to go so

---

[1] This does not take into account the realities of litigation during the COVID-19 pandemic, where depositions are occurring virtually. While everyone is hopeful that the pandemic is behind us by the time fact discovery gets underway, there is still a strong possibility that depositions will occur virtually in these actions too—and therefore, there is no increased burden on witnesses if F5 were transferred to the Western District of Texas for centralization.

[2] It is notable that had F5 previously raised these arguments, they would have actually supported Proven's arguments (and undermined the moving defendants') and the Panel may have found F5's position relevant to its initial determination on whether to centralize. Instead, F5 refused to surface these issues until after seeing that it did not obtain the venue it wanted.

far as to agree to only one deposition of the experts, stating "[s]eparate depositions *should* not be necessary" (emphasis added).

Most tellingly, however, is F5's argument regarding the NetApp's IPR of the '507 patent. According to F5, there is an efficient use of resources if its case remains in California so that it can file a motion to stay pending IPR (unavailable to any other defendant, according to F5) based on (1) an IPR that F5 did not file or join regarding the '507 patent, and (2) a hypothetical IPR on the '786 patent that F5 says is likely (but not definitely) coming. This is F5's most brazen attempt to preserve the ability to re-litigate issues that does not go its way the first time. It also brings into relief that its motion to vacate is an effort in forum shopping in the hopes it doesn't have to litigate its case like the other defendants.

F5 has not filed a copycat IPR petition on the '507 patent and has not filed or offered a declaration that it will be bound by the same estoppel as NetApp would be if the IPR is instituted. In doing so, F5 is preserving the chance to argue to the California court the *same* invalidity issues that NetApp is pursuing on the '507 patent. Because Dell has not joined the IPR either, F5's strategic attempt to avoid estoppel means that instead of just the PTAB and the Western District of Texas (from Dell) hearing the same invalidity arguments on the '507 patent, the California court could as well. This is not an efficient use of party or judicial resources.

Regarding the '786 patent, F5 places much stock in a supposed near-certain stay by the California court based on NetApp's IPR and on an IPR that "F5 will likely file . . . against the '786 patent." But F5 was first sued on (and the statutory bar for filing a petition) the '786 patent on April 13, 2020. In the seven months since then, F5 has **not** filed an IPR on the '786 patent. If a stay were as important to F5 as it now claims, F5 would have already filed that IPR, especially given that timelines to litigation milestones are relevant factors for both a motion to stay pending IPR and discretionary denial before the PTAB. Indeed, F5 cannot even state with certainty that it will file an IPR; only that one is likely.

What is clear from F5 brief is that in the name of informal coordination, it actually seeks to ride on the backs of the Texas defendants but keep open the ability to argue to the California

court any issues that it participates in and loses in Texas or before the PTAB. F5 cannot be allowed to use the Panel to do so.

### C. California's Interest in Resolving the Case is Preserved through Centralization.

F5 argues (at 12) that centralization is not proper because the Northern District of California has an interest in resolving the dispute "on its own terms." But F5 concedes that the case will be tried in the Northern District of California no matter what. Thus, the Northern District of California's interest in resolving the dispute is preserved. To the extent F5 is correct that the Northern District of California would allow that court to become familiar with the technology in advance of trial, this issue is no different than any other centralized case that returns to its home forum for trial. If F5's argument was valid, centralization would never be ordered.

F5 also argues (at 12) that the Northern District of California has "specific and detailed Patent Local Rules" that ensures patent cases are ready for trial. So too does the Western District of Texas. And F5 has not identified any differences in the patent local rules that would make a case ready for trial in the Western District of Texas but not in the Northern District of California. And, instead, the Western District of Texas's local rules for patent trials also includes provisions that make litigation more efficient: fact discovery does not begin until after that court issues its claim construction order, which necessarily will narrow the issues in the litigation.

### II. CONCLUSION

F5 should not be permitted to dodge centralization to preserve the ability to get a second bite at any argument that it dislikes from the Western District of Texas. Instead of committing in writing to numerous agreements that could avoid duplication, F5 tacitly acknowledges it retains the right to re-litigate those issues. Indeed, its present motion re-litigates the issues that Proven first argued in opposition to centralization.

F5 has failed to show good cause to vacate the Conditional Transfer Order. For the same

reasons the Panel ordered centralization and transfer for the other defendants, it should deny F5's motion now.

Dated: November 18, 2020

Respectfully submitted,

*/s/ Marc Fenster*

Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Paul A. Kroeger (SBN 229074)
pkroeger@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

***Attorneys for Plaintiff Proven Networks, LLC***